UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CATHY ALLEN, | ) |
| Plaintiff, | ) |
| vs. | ) 2:12-cv-00444-PPS |
| HOOK-SUPERX, LLC | ) |
| Defendant. | ) |

**<u>OPINION AND ORDER</u>**

Hook-SupeRx seeks summary judgment against the plaintiff, Cathy Allen, who was wrongly dispensed a medication by a CVS Pharmacy operated by Hook-SupeRx. (Docket Entry 32.) It is undisputed that the pharmacy gave Allen thyroid medication she hadn't been prescribed, that she took it, that she had medical issues, and that ultimately she was diagnosed with a thyroid disorder. But Because Allen's causation theory relies entirely on suspicious timing and guesswork, and the defense has proffered an expert who says Allen's guess is wrong, Allen's case cannot defeat summary judgment.

The facts are not in dispute. According to Allen, she went to visit her family doctor, Dr. Markowitz, for a checkup on January 13, 2011. At the time of her visit with Dr. Markowitz, Allen was taking three prescriptions: hydrochlorothyazide (for hypertension), Nexium (for acid reflux issues), and a Proair inhaler (for asthma). Based on Allen's general checkup that day Dr. Markowitz renewed her three prescriptions. The prescriptions were sent to a CVS store in Schererville, Indiana.

When Allen went to the CVS store to pick up her prescriptions, she noticed that there was a fourth prescription — for the drug Synthroid — waiting for her. Synthroid is a drug used as "a replacement for a hormone normally produced by your thyroid gland to regulate the body's energy and metabolism." "Synthroid," Drugs.com, http://www.drugs.com/synthroid.html (last visited April 16, 2015). Allen looked at the new medication and read the product information sheet that came with it and simply assumed that Dr. Markowitz had prescribed another drug. So she took the new medication home and starting using it. She took Synthroid for 30 days and then got the prescription refilled at the same CVS Pharmacy in Schererville. Allen got the Synthroid refilled a second time and took it for another couple of weeks until she had another appointment with Dr. Markowitz on April 4, 2011.

During her office visit on April 4 Allen described the problems that she was experiencing of late: chest pains, profuse sweating and an odd sensation that her body was vibrating. Allen asked the whether the symptoms she was experiencing could be the result of her new medication — Synthroid. Markowitz was perplexed and told Allen that he did not prescribe Synthroid to her. He ordered her to immediately stop taking the Synthroid and put her on a new medication to get her thyroid under control. As it turned out, CVS Pharmacy had dispensed the Synthroid to Ms. Allen — and then refilled it twice more — all by mistake.

Beginning in May 2011 and continuing until February of the following year, Allen experienced chest pains. She was eventually diagnosed with hyperthyroidism,

and after seeing an endocrinologist, Allen was told she has Graves disease. Graves disease "is an autoimmune disorder that leads to overactivity of the thyroid gland (hyperthyroidism). . . . Graves disease is the most common cause of hyperthyroidism." "Graves disease," U.S. National Library of Medicine, National Institutes of Health, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/000358.htm (last updated May 10, 2014). Because it is undisputed that CVS wrongly dispensed the drug Synthroid to Allen, the only question in this case is this: did the Synthroid cause her symptoms or was Graves disease the culprit? (A follow-up question could ask whether the Synthroid caused the Graves disease, but the sheer impossibility of a lay person guessing at that underscores the causation issues that are the fulcrum of Allen's case.) The timing of Allen's taking the Synthroid and the onset of the deleterious symptoms should certainly raise eyebrows. But just because something occurs *after* the fact does not mean it occurs *because* of the fact.

Hook-SupeRx chose to hire an expert to answer the question — what caused Ms. Allen's symptoms? Dr. David Baldwin, Professor of Medicine at Rush University Medical Center in Chicago, reviewed all of Ms. Allen's medical records and concluded that the exposure to Synthroid did not cause Ms. Allen's Graves disease, nor did it cause the awful symptoms she was experiencing. Rather, it was the Graves disease itself that caused the symptoms. According to Dr. Baldwin, there is nothing in the medical literature that in any way indicates that taking Synthroid can trigger Graves disease or cause any other form of hyperthyroidism to start. (*See* DE 32-2 at 3.) In sum, Baldwin

3

opines that Ms. Allen's "exposure to Synthroid from mid-January to early April 2011 had no effect on her thyroid gland, her symptoms, or her condition of health." *Id.*

Ms. Allen, by contrast, did not disclose an expert. Although in answer to an interrogatory Ms. Allen said she "is pursuing an expert, and will provide information about the expert when received," no expert was ever disclosed. (DE 32-3 at 4.) Whether Allen couldn't afford an expert, couldn't find one, or simply chose not to offer one is unclear from the record. In any event, Allen takes the position in her summary judgment briefing that some things are so obvious that an expert is not necessary to prove causation, and this is one of those situations. Her simple position is that she was negligently dispensed the wrong medication, she experienced adverse symptoms, and therefore the medication caused the harm.

Hook-SupeRx now seeks summary judgment on the grounds that causation in a case like this can only be proved through expert testimony. Summary judgment is appropriate if Hook-SupeRx can show "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R. Civ.P. 56(a). I find that summary judgment is appropriate here because Allen's failure to offer any expert testimony makes it impossible for her to prove causation. And, of course, causation is an element of any tort claim. That is, the plaintiff must show that "the act complained of" — the improper dispensing of the Synthroid — was "the proximate cause of the plaintiff's injuries." *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind. 2000) (citations omitted).

The Seventh Circuit has often stated in the context of Social Security disability appeals that an Administrative Law Judge, when deciding if an applicant is disabled, must resist the temptation of "playing doctor." *See e.g. Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). But that is precisely what Allen is asking me to allow a jury to do. On the one side of the scale is an expert who will opine that Allen's injuries were not caused by her ingestion of Synthroid. And on the other side of the scale is Allen's lay testimony that she took the medication and then she started experiencing the adverse symptoms. I concede that there is an allure to Allen's position. Coincidences like this don't often occur. So intuition may lead one way. But intuition about complex medical issues can often lead one astray. It is why the Seventh Circuit has commented that "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). And although the analogy to the Social Security world is not a perfect one, the point remains that the complex intersection between medications and what effects they may have on human beings is an area where a lay jury is apt to need assistance from an expert.

It is true that not all cases involving medical injuries require expert testimony to prove causation. Sometimes the cause of medical problems is obvious enough for the jury to decide the issue of causation without help from experts. *See, e.g.*, *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009). In *Hendrickson*, a prisoner alleged that he was beaten by a guard and the beating caused him injuries. The guard contended that expert

5

testimony was needed on the issue of causation but the Seventh Circuit disagreed, noting that jurors can make that conclusion on their own because the cause of the plaintiff's injuries were "within their common experiences or observations." *Id*. But even *Hendrickson* noted that if, for example, the plaintiff had claimed that the guard never touched him but denied him medical care, then expert testimony on causation would be required. *Id.* Of course, this case is governed by Indiana law, but Indiana courts say essentially the same thing. *Singh v. Lyday*, 889 N.E.2d 342, 357 (Ind. App. 2008) ("When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." (quotation marks, citations omitted.)).

So the issue comes down to whether the causation allegation is a matter within the common experience of a juror. Graves disease, Synthroid, and hyperthyroidism are all outside the common experience of the average juror. As I noted before, when the issue involves the complex internal medicine question of what caused a person's symptoms when a drug is involved, that is a matter requiring expert opinion to connect the dots. The cases cited by Hook-SupeRx that involve the negligent dispensing of a medication all persuasively stand for that proposition. *See e.g. Miller v Indep. Health Servs.*, No. 4:08-3745, 2010 WL 3282603 (D. S.C. July 7, 2010), report and recommendation adopted, 2010 WL 3282553 (D.S.C. Aug. 18, 2010); *Ellingson v. Walgreen co.*, 78 F.Supp. 2d 965 (D. Minn. 1999); *Venable v. Fred's Inc.*, 2014 Ark. App. 286 (2014); *Ruiz v. Walgreen Co.*, 79 S.W.3d 235 (Tex. App. 2002). Ms. Allen offers no case to the

contrary, and I could not find one through my own research.

Furthermore, Indiana courts have been clear in other cases that require determinations of medical causation that such questions require the input of an expert. "[Q]uestions of medical causation of a particular injury are questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters." *Hannan v. Pest Control Servs.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000) (citing *Brown v. Terre Haute Regional Hosp.*, 537 N.E.2d 54, 61 (Ind. Ct. App. 1989)); *see also*, *Tucker v. SmithKline Beecham Corp.*, 701 F. Supp. 2d 1040, 1047 (S.D. Ind. 2010) ("Causation is a required element of each of the plaintiff's claims, and, in pharmaceutical cases, expert testimony is required to prove a causal connection between the drug and its alleged effects. ") (citing *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 366 (Ind. App. 2002)); *Porter v. Whitehall Lab., Inc.*, 791 F. Supp. 1335, 1341-1342 (S.D. Ind. 1992) ("A mere temporal relationship between [Plaintiff's] ingestion of ibuprofen and his subsequent injury cannot form the basis for a reasonable finding of causation. Such a blunt inference cannot provide a reasonably reliable explanation for complex, unseen physiological processes. While a temporal congruity may be some evidence of causation, it is insufficient evidence to move the merely possible to the reasonably probable. Any finding of the fact of causation based solely on facts within the understanding of lay jurors would be bald speculation. ¶ Therefore, this matter presents a situation where expert testimony is not only helpful but absolutely necessary. When the issue of proximate cause is not within the understanding of lay persons,

testimony of an expert witness on the issue is necessary. Questions of medical causation of a particular injury are questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters." (quotation marks, citations omitted.)).

So Allen is left to nakedly argue, without citation to any evidence, that "but for the Synthroid, Ms. Allen would not have been injured with severe chest pains, vibrating throughout her body, and excessive heat . . . ." (DE 34 at 6.) But as the above cited cases state, simply stating a conclusion does not make it so, and no reasonable jury could find it to be so, even viewing the case in the light most favorable to Ms. Allen as the non-moving party. Hook-SupeRx's expert's statement that Synthroid didn't cause Ms. Allen's symptoms is uncontested by anything more than suspicious timing, which doesn't cut it.

## CONCLUSION

In sum, cases have to be decided based on evidence, not intuition, when the plaintiff alleges complex medical injuries outside lay knowledge and experience. For the sake of summary judgment I will assume that CVS's dispensing of Synthroid to Ms. Allen was negligent (a fair assumption). But because Ms. Allen has failed to offer any expert testimony that the Synthroid caused her adverse symptoms, I have no choice but to **GRANT** summary judgment in favor of Hook-SupeRx. (DE 32.) The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendant Hook-SupeRx and against Plaintiff Cathy Allen. The Clerk of Court is **DIRECTED** to treat this civil action as

8

**TERMINATED**. All further settings in this action are hereby **VACATED**.

**SO ORDERED**.

ENTERED: April 17, 2015

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**